UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


MOSAIC FINANCIAL SERVICES, L.L.C.,

    Plaintiff,         Case No. 1:07-mc-65

v.                Hon. Gordon J. Quist

ROTATEBLACK INVESTMENT FUND I,
L.L.C., DHRU DESAI, AND JOHN PAULSEN,

    Defendants.
_____/


**REPORT AND RECOMMENDATION**

    Pending before the court is a motion by Plaintiff Mosaic Financial Services, L.L.C.

("Mosaic") for Contempt Sanctions for Defendant John Paulsen's failure to comply with the Court's

December 3, 2007 Order Reinstating Order Preventing Transfer of Property, Money, or Things in

Action (the "Order").

    **I. Background**

    Plaintiff Mosaic prevailed in a breach of contract action against Defendants

RotateBlack Investment Fund I, L.L.C. ("RBLLC"), Dhru Desai and John Paulsen in the United

States District Court for the Southern District of New York, Case No. 06-CV-5253.  On February

14, 2007, a judgment in the amount of $1,449,298.00 was entered against Defendants Paulsen and

Desai in Mosaic's favor, after a hearing on Mosaic's motion for summary disposition.  (Docket

Entry #1).  That judgment was later amended to include an award of administration fees in the

amount of $37,500.00 and interest in the amount of $52,500.00.  *(*Docket Entry #2*)*.  The total

judgment awarded to Mosaic of $1,539,298.00 (the "Amended Judgment") was registered with this Court on June 5, 2007. *Id.*

On June 8, 2007, this Court entered an order preventing Defendants from transferring property, money, or any other things in action under Mich. Comp. Laws § 600.6104. (Docket Entry #8). The order was lifted, on August 16, 2007, after the parties had discussed settlement options. (Docket Entry #47). However, when negotiations turned sour, this Court entered an Order on December 3, 2007 reinstating its June 8, 2007 order preventing Defendants from transferring property, money or other things in action under Mich. Comp. Laws § 600.6104. (Docket Entry #58). The December 3, 2007 Order stated:

> It is hereby ordered that Defendants RotateBlack Investment Fund I, L.L.C., its successor-in-interest BC Investments, L.L.C., Dhru Desai and John Paulsen are not to transfer any property, money, or other things in action that could be used to satisfy Plaintiff Mosaic's Judgments, until the RotateBlack Judgment and the Amended Judgment are paid in full, or until further order of this Court.

Docket Entry #58.

Since the Order was reinstated, Mosaic has obtained documents evidencing Paulsen's transfer of funds from both his personal bank account and RBLLC's bank account, to which he had access, in direction violation of the Order. On June 8, 2010, Mosaic filed this motion for the entry of a Contempt Order for Paulsen's failure to comply with the December 3, 2007 order, which is now before the Court. (Docket Entry #138).

**II. Standard of Review**

Holding a party in civil contempt may be intended either to coerce future compliance with a court's order or to compensate for injuries resulting from the noncompliance. *United States v. United Mine Workers of Am.*, 330 U.S. 258, 303-04 (1947). The Supreme Court has explained

that the power to hold a party in contempt "is a necessary and integral part of the independence of the judiciary, and is absolutely essential to the performance of the duties imposed on them by law." *Gompers v. Buck's Stove & Range Co.*, 221 U.S. 418, 450 (1911).  The court may choose to issue contempt sanctions as a means of enforcing its judgment and is afforded wide discretion in deciding a contempt petition.  *Elec. Workers Pension Trust Fund v. Gary's Elec. Serv. Co.*, 340 F.3d 373, 378 (6th Cir. 2003).  In order to show that a party is in civil contempt of a court order, the moving party must demonstrate clear and convincing evidence that the opposing party "violated a definite and specific order of the court requiring [him] to perform or refrain from performing a particular act or acts, with knowledge of the court's order."  *Liberte Capital Group, L.L.C. v. Capwill*, 462 F.3d 543, 551 (6th Cir. 2006) (citing *Glover v. Johnson*, 934 F.3d 703, 707 (6th Cir. 1991)).  The burden of production then shifts to the opposing party, who may defend by providing evidence that he is presently unable to comply with the court's order.  *United States v. Rylander*, 460 U.S. 752, 757 (1983).  In evaluating a defendant's attempt to comply with a court order, the court must determine whether the defendant "took all reasonable steps within [his] power to comply."  *Peppers v. Barry*, 873 F.3d 967, 969 (6th Cir. 1989).  It is not enough to demonstrate that the defendant tried to comply in good faith, but rather he must show "categorically and in detail" why he is unable to comply with the court's order.  *Rolex Watch U.S.A., Inc. v. Crowley*, 74 F.3d 716, 720 (6th Cir. 1996).

**III. Discussion**

In this case, Plaintiff Mosaic obtained financial records of several bank accounts, including a personal checking and savings account owned by Defendant Paulsen, from the Seneca Nation.  These records had been provided to the Seneca Nation by Paulsen during negotiations regarding a possible casino venture.  The uncontested record furnished by Mosaic provides clear and

3

convincing evidence that Paulsen, both personally and in his role as manager of RBLLC, acquired

funds that he spent on leisure items for himself and several family members. From March 18, 2008

until May 15, 2008, while the order was in effect, Paulsen withdrew a total of $61,625.48 from his

personal JP Morgan Chase bank account with the last four digits 7874 (hereinafter, "account number

7874"). *See* Plaintiff's brief exhibits #5 and #6. Among these expenditures were thousands of

dollars Paulsen spent in debit card purchases ranging from $168.88 at Walmart to $262.88 at the

Sunglass Shoppe. *Id.* Additionally, Paulsen wrote over $20,000 worth of checks and wired

$16,246.33 out of his account to his mother and brother, and to pay for his leased Mercedes Benz

automobile. *Id.*

Defendant Paulsen directly violated this Court's December 3, 2007 Order when he

transferred money out of his personal bank account from March 2008 to May 2008. After reviewing

the evidence, this Court finds that Defendant Paulsen is in contempt of this Court's Order, and that

contempt sanctions are both appropriate and necessary both to enforce the Order and to provide a

remedy Mosaic for the loss it incurred as a result of Paulsen's noncompliance.

Defendant Paulsen is in civil contempt of an Order entered under Mich. Comp. Laws

§ 600.6104 on December 3, 2007. (Docket Entry #58). The authority for this Order comes from

Chapter 61 of Michigan's Revised Judicature Act of 1961 (Act 236 of 1961), which is titled

"Proceedings Supplementary to Judgment" (the "PSJA") (MCL 600.6101 et seq.). The pertinent

section, § 600.6104(2), states:

> After judgment for money has been rendered in an action in any court of this state,
> the judge may, on motion in that action or in a subsequent proceeding:
>
> ....

4

(2) Prevent the transfer of any property, money, or things in action, or the payment or delivery thereof to the judgment debtor

PSJA (1975).

Although the Order specifically states that it is entered "under Mich. Comp. Laws § 600.6104," (Docket Entry #58) Defendant claims that the Order is subject to a two-year maximum duration from the date it was issued, due to a clause in Mich. Comp. Laws § 600.6116, which states:

(1) An order for examination of a judgment debtor may contain a provision restraining the judgment debtor from making or suffering any transfer or other disposition of, or interference with any of his property then held or thereafter acquired by or becoming due to him not exempt by law from application to the satisfaction of the judgment, until further direction in the premises, and such other provisions as the court may deem proper.

(2) Unless previously vacated by order of the court or by stipulation of the parties in writing, a restraining provision as herein provided shall remain in full force and effect for a period of 2 years from the date thereof, at which time it shall be deemed vacated for all purposes unless extended by order of the court for good cause shown.

PSJA (1963).

Defendant contends that § 600.6116 should be read alongside § 600.6104, so that the duration limitation in § 600.6116(2) would then apply to the Order, rendering it vacated two years from the date it was issued. However, the provision in § 600.6116 restricting the transfer of property is authorized by subsection (1) as part of an "order for examination of a judgment debtor." The two year limitation in § 600.6116(2) by its own terms refers to the "restraining provision as herein provided," meaning the one in § 600.6116(1), which is part of an order for examination of a judgment debtor. Plaintiff Mosaic did file for a judgment debtor's examination; however, this was two days after the Order was issued. (Docket Entry #61). Therefore, the Order was not issued pursuant to § 600.6116 and the two year limitation on a § 600.6116 debtor exam order does not apply.

Furthermore, the plain language of this Court's Order states that the duration of the Order lasts "until the RotateBlack Judgment and the Amended Judgment are paid in full, or until further order of this Court." (Docket Entry #58). Section five (5) of the Mich. Comp. Laws § 600.6104 further clarifies the broad discretion that the Court maintains when it chooses to issue an order under the PSJA. Under § 600.6104(5), the court may:

> (5) Make any order as within his discretion seems appropriate in regard to carrying out the full intent and purpose of these provisions to subject any nonexempt assets of any judgment debtor to the satisfaction of any judgment against the judgment debtor.

PSJA (1975).

This Court had the authority and broad discretion to enter an order preventing Defendant Paulsen from transferring money or any other assets that could be used to satisfy the Amended Judgment. It is evident from the clear language in the Order as well as the interpretation of the § 600.6104 statute, under which the Order was entered, that the Court did not intend for the Order to expire two years after its date of issuance, but rather, when "the RotateBlack Judgment and the Amended Judgment are paid in full, or until further order of this Court." (Docket Entry #58). Neither has happened.

Defendant next argues that certain transfers from the RBLLC account do not constitute a violation of the Order, because these transfers were not made by Defendant Paulsen as an individual. In its brief in support of its motion, Mosaic provided the financial records from several accounts at JP Morgan Chase bank. These accounts include Defendant Paulsen's personal account and RBLLC's account. Mosaic also provided documentation showing that the statements from both accounts are mailed to the same address: Paulsen's home in Petoskey, Michigan. Plaintiff's brief exhibits #5, 6, 7, 8, & 9. It is apparent from RBLLC's general ledger that Defendant

6

Paulsen withdrew approximately $433,926.91 from December 3, 2007 until July 31, 2009 in entries designated as "Owner's Equity: Capital Withdrawals" and usually notated with Defendant's initials, JP. *See* Plaintiff's brief exhibit #2. This money was spent in various ways, including transfers to Paulsen's personal checking account number 7874, purchases made with the RBLLC debit card, payments for Paulsen's Mercedes Benz automobile, wire transfers to Paulsen's relatives, and payments for Paulsen's residence. *Id.*

Defendant Paulsen admits that he is the manager of RBLLC. *See* Defendant's affidavit dated June 18, 2010. As an officer of RBLLC and a party to this action himself, he was on notice of the Order. "If a corporate officer avoids a court's order to the corporation for failing to take action or attempt compliance, 'they, no less than the corporation itself, are guilty of disobedience, and may be punished for contempt.'" *Elec. Workers Pension Trust Fund*, 340 F.3d at 383 (quoting *Wilson v. United States*, 221 U.S. 361, 376 (1911)). A similar rationale precludes Paulsen, purportedly acting as a corporate officer, from working through the corporation (i.e. using the corporation) to escape his personal obligation. This is consistent with the common-law doctrine that an injunctive or restraining type of decree not only binds the party defendant but also those identified with him in interest, in 'privity' with him or subject to his control. *See, Golden State Bottling Co., Inc. v. National Labor Relations Board,* 414 U.S. 168, 179 (1973). Exercising his control over corporate funds by using them to pay for his personal expenses adequately demonstrates this was, in fact, Paulsen's own money and was therefore money available to pay the outstanding judgment against him personally. There was clearly a mutuality, or commonality, of interest between RBLLC and Paulsen. This becomes patently obvious when the money was transferred from the corporate account directly into Paulsen's personal account. In short, Paulsen was nothing more

than "the man behind the curtain" and the corporation he controlled was no more an independent entity than was "the Wizard."[1]

The only other conclusion one can reach is that Paulsen was embezzling from RBLLC, and that has not been suggested.

Furthermore, in order to coerce compliance with the Order from RBLLC or any other nominee acting as the judgment debtor's pawn and to compensate Mosaic for its losses due to Paulsen's disobedience, "it is fully appropriate to impose judicial sanctions on the nonparty [corporation]." *Id.* Defendant's contentions that he should not be held liable for the actions he took as an officer of RBLLC are without merit. Paulsen had control of RBLLC's finances and is liable for the actions he took in that capacity to divert funds that could have been used to satisfy the Judgment, in violation of the Order. Specifically, the Court is imposing civil sanctions on Defendant Paulsen both to coerce future compliance with this Court's Order and to compensate Mosaic for injuries resulting from Paulsen's noncompliance. *See United Mine Workers of Am.*, 330 U.S. at 303-04.

The power to punish for contempt is an inherent power of the federal courts and includes the power to punish violations of the court's own orders. *In re Manufacturers Trading Corp.*, 194 F.2d 948, 955-956 (6th Cir. 1952). The district court also has statutory authority to punish disobedience of its lawful orders and decrees. *First Sec. Nat. Bank & Trust Co. v. United States*, 382 U.S. 34, 35 (1965). Statutorily, 18 U.S.C.A. § 401 states:

A court of the United States shall have power to punish by fine or imprisonment, or both, at its discretion, such contempt of its authority, and none other, as:

---

[1] *See, The Wizard of Oz*, by Frank Baum.

(1) Misbehavior of any person in its presence or so near thereto as to obstruct the administration of justice;

(2) Misbehavior of any of its officers in their official transactions;

(3) Disobedience or resistance to its lawful writ, process, order, rule, decree, or command.

18 U.S.C.A. § 401 (2002).

In this case, Paulsen disobeyed a lawful Order issued by this Court, and this Court has both the statutory and inherent power to punish Paulsen for civil contempt.

Defendant claims that Mosaic has not demonstrated a loss or an injury that it should be compensated for as a result of Defendant's violation. He states that "even assuming that Mr. Paulsen violated the December, 2007, Order during the two months identified by Plaintiff, Plaintiff has not provided to this Court any evidence of injury or any basis for determining how to compensate Plaintiff for any claimed injury during that period or that the relief requested by Plaintiff properly compensates Plaintiff for Defendant's noncompliance, if any, during that period." Defendant's brief at 8. Defendant later suggests that "it's difficult to understand how there could be any injury" to Mosaic since it has already received a large portion of the Amended Judgment. *Id.*

The harm caused by failing to pay a judgment owed when funds to do so are otherwise available should be self-evident. However, the sanction of civil contempt is not classified as a collection action, but rather is "more properly considered a compensatory remedy and an encouragement to comply with court orders." *Elec. Workers Pension Trust Fund*, 340 F.3d at 385. In this case, the sanction against Defendant Paulsen is brought to compensate Mosaic for losses based on Paulsen's failure to comply with the court order and not as a medium for collecting the

underlying judgment, so "it is not a collection action but a compensatory tool which expressly permits the use of monetary sanctions in this manner." *Id.* Therefore, Mosaic is entitled to its loss due to Paulsen's deliberate violation of this Court's Order, that is any funds that Paulsen diverted which might have been used instead to satisfy the Amended Judgment. These funds approximate $401,869.37 and include the sum total of the amount of money Paulsen transferred from the RBLLC fund from December 3, 2007 until July 31, 2009[2] and the amount of money Paulsen transferred from his account number 7874 from April 15, 2008 until May 15, 2008, all as shown by Plaintiff's uncontroverted evidence. Plaintiff's brief exhibits 2, 5 and 6.

Because Plaintiff has submitted clear and convincing evidence that Defendant violated the Order, and Defendant has failed to produce any evidence that he took all reasonable steps to comply with the Order, I respectfully recommend that Plaintiff's motion seeking contempt sanctions against Defendant Paulsen (Docket No. 138) be **GRANTED**, and that Defendant be adjudged in contempt and ordered to pay Plaintiff Mosaic $401,869.37 within ten (10) days of the Court's order, upon penalty of being incarcerated from the 10th day forward if such sum is not timely

---

[2]This sum does not include any withdrawals made by Paulsen from the RBLLC account or Paulsen's personal account 7874 from March 15, 2008 until April 15, 2008. Defendant argues that he should not be held liable for expenditures he made during this period because Plaintiff had signed a contract effective February 15, 2008 with an individual named Randy Edgerton agreeing to "forbear from continuing with its efforts to enforce the Default Judgment and the Amended Judgment [entered against Defendant Paulsen] for as long as there is no breach by Edgerton of any obligation under this Agreement." Defendant's Response Exhibits #2 and #3. In return for this forbearance, Edgerton was to make monthly payments to Mosaic. Edgerton made one payment and then breached the agreement on April 15, 2008. The agreement makes no reference to the Order, nor does Mosaic agree therein to not enforce the Court's Order. However, since Plaintiff appeared to concur with this argument during the contempt hearing, the court will honor this agreement.

paid, until this contempt be purged by payment of this sum. I also recommend defendant be assessed costs and attorney's fees.

**IT IS SO ORDERED.**


Dated:  August 23, 2010                                        /s/ Hugh W. Brenneman, Jr.
                                                               HUGH W. BRENNEMAN, JR.
                                                               United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).