UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

MOSAIC FINANCIAL SERVICES, LLC,

    Plaintiff,

v.

ROTATEBLACK INVESTMENT
FUND I, LLC, DHRU DESAI, and
JOHN PAULSEN,

    Defendants.
_____/

Case No. 1:07-MC-65

HON. GORDON J. QUIST

## OPINION

Defendant John Paulsen has file Objections to the August 23, 2010, Report and Recommendation issued by Magistrate Judge Hugh Brenneman Jr., recommending that Plaintiff's Motion for Contempt Sanctions be granted. Plaintiff has filed a response, arguing that the Court should not only adopt the Report and Recommendation, but should also include in any order imposing contempt sanctions the assets that Defendant Paulsen transferred to Defendant Dhru Desai pursuant to the April 3, 2008, Letter Agreement between PAULSEN and Desai.

Having conducted a *de novo* review of the Report and Recommendation, PAULSEN's Objections, and the pertinent portions of the record, the Court concludes that the Report and Recommendation should be adopted and Plaintiff's motion be granted.

### BACKGROUND

Plaintiff, Mosaic Financial Services, L.L.C. ("Mosaic"), sued Defendants, RotateBlack Investment Fund I, LLC, Dhru Desai ("Desai"), and John Paulsen in the United States District Court for the Southern District of New York for breach of contract and breach of personal guaranty. A default judgment (the "Judgment") was entered against RotateBlack Investment Fund I, LLC on December 6, 2006, in the amount of $1,394,219.25. On February 14, 2007, following a hearing on

Mosaic's motion for summary judgment, the New York court entered judgment in the amount of $1,449,298.00 in favor of Mosaic and against Paulsen and Desai. The February 14, 2007, judgment was amended on March 12, 2007, to include an award of administration fees in the amount of $37,500.00 and interest in the amount of $52,500.00 (the "Amended Judgment").

Mosaic registered the Judgment and the Amended Judgment in this Court on June 5, 2007. On June 8, 2007, the Court entered an Order Preventing Transfer of Property, Money, or Things in Action Under Mich. Comp. Laws. § 600.6104 ("Restraining Order"), which provided

> that Defendants RotateBlack Investment Fund I, L.L.C., its successor-in-interest BC Investments, L.L.C., Dhru Desai and John Paulsen are not to transfer any property, money, or other things in action that could be used to satisfy Plaintiff Mosaic's Judgments, until the RotateBlack Judgment and the Amended Judgment are paid in full, or until further order of this Court.

(Dkt. # 8.) Subsequently, the parties entered into settlement discussions and, as part of their negotiations, agreed to lift the Restraining Order. Pursuant to that agreement, on August 16, 2007, the Court entered a Stipulated Order Lifting Injunction Pursuant to M.C.L. § 600.6104. (Dkt. #47.) A short time later, however, Defendants defaulted on the agreement, and Mosaic moved to reinstate the Restraining Order. On December 3, 2007, the Court entered an Order Reinstating Order Preventing Transfer of Property, Money, or Things in Action Under Mich. Comp. Laws § 600.6104. (Dkt. #58.) The Retraining Order has remained in effect at all times since it was reinstated on December 3, 2007.

On June 8, 2010, Mosaic filed a motion to hold Paulsen in contempt for violating the Restraining Order. In particular, Mosaic alleged that Paulsen: (1) purchased Desai's interest in Rotate Black LLC ("RBLLC") and its affiliates in exchange for 4,500,000 shares of common stock in Rotate Black, Inc. and $30,000.00 in cash; (2) used large sums of money from his personal bank account and the accounts of RBLLC to pay for personal items for himself and his family members; and (3) transferred funds to himself, his brother and his mother from such accounts. The Court referred Mosaic's motion to Magistrate Judge Brenneman pursuant to 28 U.S.C. § 636(b)(1)A).

In his Report and Recommendation, Magistrate Judge Brenneman found that Paulsen violated the Restraining Order by transferring funds from his personal bank account between March 2008 and May 2008. (Report & Recommendation ("R & R") at 4.) Magistrate Judge Brenneman further found that Paulsen, acting as an officer of RBLLC, violated the Restraining Order by withdrawing or transferring on behalf of RBLLC substantial funds from RBLLC's account. Such transactions included transfers to Paulsen's personal account, purchases made with the RBLLC debit card, payments for Paulsen's Mercedes Benz automobile, and wire transfers to Paulsen's relatives. (R & R at 6-7.) Because Paulsen had notice of the Restraining Order, Magistrate Judge Brenneman concluded that Paulsen is in contempt for disobeying the Restraining Order and recommended that the Court impose civil contempt sanctions to coerce Paulsen and the entities he controls into compliance with the Restraining Order and to compensate Mosaic for its injuries. (R & R at 8.) For a specific sanction, he recommended that Paulsen be ordered to pay Mosaic $401,869.37 within ten days, upon penalty of incarceration if such sum is not timely paid. (R & R at 10-11.)

## STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 636(b)(1), this Court is required to review *de novo* those portions of the Report and Recommendation to which specific objections have been made. *See United States v. Raddatz*, 447 U.S. 667, 673-74, 100 S. Ct. 2406, 2411 (1980). The Court may accept, reject, or modify any or all of the magistrate judge's findings or recommendations. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3). A district court reviewing a report and recommendation is not required to hold a *de novo* hearing. *Raddatz*, 447 U.S. at 676, 100 S. Ct. at 2411. Rather, "Congress intended to permit whatever reliance a district judge, in the exercise of sound judicial discretion, cho[oses] to place on a magistrate's proposed findings and recommendations." *Id.*

## DISCUSSION

### A. Paulsen's Objections

Paulsen raises several objections which the Court addresses in turn.

### *Lack of Certification Under 28 U.S.C. §636(e)(6)(B)(iii)*

Paulsen first argues that the Report and Recommendation is procedurally improper because the referral should have been made pursuant to 28 U.S.C. § 636(e)(6) and the Report and Recommendation fails to comply with the requirements of 28 U.S.C. § 636(e)(6)(B)(iii). This argument lacks merit because § 636(e) does not apply in these circumstances.

Section 636(e) addresses the contempt authority of magistrate judges. Pursuant to § 636(e)(6)(B)(iii), when a person commits an act that may constitute a civil contempt in a case or proceeding referred to a magistrate judge pursuant to 28 U.S.C. § 636(a) or (b),

> the magistrate judge shall forthwith certify the facts to a district judge and may serve or cause to be served, upon any person whose behavior is brought into question under this paragraph, an order requiring such person to appear before a district judge upon a day certain to show cause why that person should not be adjudged in contempt by reason of the facts so certified. The district judge shall thereupon hear the evidence as to the act or conduct complained of and, if it is such as to warrant punishment, punish such person in the same manner and to the same extent as for a contempt committed before a district judge.

28 U.S.C. § 636(3)(6)(B).

The lack of compliance with the above requirements is inconsequential because no act alleged to constitute a civil contempt occurred in a case or proceeding before a magistrate judge. *See Moore v. T-Mobile USA Inc.*, No. 10 CV 527(SLT), 2010 WL 5817644, at *1 (E.D.N.Y. Nov. 15, 2010) (noting that the certification procedure in § 636(e)(6)(B) applies "where a person has committed an act constituting a contempt in a proceeding before the magistrate judge"); *In re Kitterman*, 696 F. Supp. 1366, 1368 (D. Nev. 1988) ("Under § 636(e) a federal district judge adjudicates and punishes contempts which occur before a United States magistrate."). Thus, § 636(e)(6)(B) does not apply.

### *Authority for the Restraining Order*

The magistrate judge rejected Paulsen's argument that M.C.L.A. § 600.6104, pursuant to which the Restraining Order was issued, must be read in conjunction with M.C.L.A. § 600.6116,

which pertains to examinations of judgment debtors and provides that an order for such examination may restrain the judgment debtor from transferring or disposing of property that may be used to satisfy the judgment. *See* M.C.L.A. § 600.6116(1). Paulsen argued that the two year duration set forth in § 600.6116(2) for orders issued pursuant to § 600.6116(1) also applies to orders issued pursuant to § 600.6104 that restrain judgment debtors from transferring property.[1] Although noting that Mosaic did seek and obtain separate orders for an examination of Paulsen pursuant to § 600.6116, the magistrate judge observed that because the Restraining Order was issued pursuant to § 600.6104, the two year limitation in § 600.6116(2) does not apply to the Restraining Order. The magistrate judge found that the Restraining Order was separately authorized under §600.6104(2) and (5), which provide:

> After judgment for money has been rendered in an action in any court of this state, the judge may, on motion in that action or in a subsequent proceeding:
>
> . . . .
>
> (2) Prevent the transfer of any property, money, or things in action, or the payment or delivery thereof to the judgment debtor;
>
> . . . .
>
> (5) Make any order as within his discretion seems appropriate in regard to carrying out the full intent and purpose of these provisions to subject any nonexempt assets of any judgment debtor to the satisfaction of any judgment against the judgment debtor.

M.C.L.A. § 600.6104(2) and (5).

Paulsen contends that the magistrate judge erred in concluding that § 600.6104 authorizes the Restraining Order because subsection (2) only prevents transfers of property, money, etc. "to the judgment debtor," not by or from the judgment debtor. Paulsen further asserts that subsection (5)

---

[1] Section 600.6116(2) provides:

Unless previously vacated by order of the court or by stipulation of the parties in writing, a restraining provision as herein provided shall remain in full force and effect for a period of 2 years from the date thereof, at which time it shall be deemed vacated for all purposes unless extended by order of the court for good cause shown.

could not authorize such an order because it is limited by its own language to the specific relief authorized in subsections (1) through (4). In other words, Paulsen contends that the language allowing a court to make any order appropriate "to carrying out the full intent and purpose of these provisions" cabins the relief a court may order to what is specifically authorized in the preceding four subsections. Paulsen asserts: "The purpose of PSJA [Proceedings Supplementary to Judgment Act] Section 6104(5), then, isn't to expand a judgment creditor's rights beyond the plain words of the PSJA. The purpose of this section is to be sure that a court has the authority to make orders that are necessary to implement these other sections of the PSJA." (Def.'s Objections at 6.) This argument lacks merit.

Paulsen disregards critical language in subsection (5), which allows a court to make any order deemed appropriate to carry out "the full intent and purpose of these *provisions to subject any nonexempt assets of any judgment debtor to the satisfaction of any judgment against the judgment debtor*." (Italics added). As this language suggests, the intent of the statute is to make any nonexempt assets of a judgment debtor available to satisfy the judgment and a court may enter any order that furthers that purpose. In fact, courts, including the Sixth Circuit, have recognized the authority under § 600.6104(5) as very broad. *See Rogers v. Webster*, No. 84-1096, 1985 WL 13788, at *1 (6th Cir. Oct. 22, 1985) (citing § 600.6104(5) and stating that "Michigan has given its courts extremely broad authorization to aid execution on their judgments, including ordering satisfaction out of liquidated or unliquidated property and the appointment of a receiver"); *In re John Richards Homes Bldg. Co.*, 298 B.R. 591, 608 (Bankr. E.D. Mich. 2003) ("The Court's authority under [§ 600.6104(5)] is very broad.").

### *Paulsen's Capital Withdrawals From RBLLC*

Paulsen contends that the magistrate judge erred in concluding that his capital withdrawals from RBLLC violated the Restraining Order. He argues that the magistrate judge's rationale for applying the Restraining Order to the withdrawals is at odds with the facts of this case because

RBLLC was not subject to the Restraining Order. The Court disagrees. The magistrate judge did not conclude that the payments from RBLLC violated the Restraining Order because RBLLC was subject to the order. Rather, he found that the withdrawals violated the Restraining Order because Paulsen exercised complete control over the funds of RBLLC and, as a practical matter, they were his to spend as he pleased. Thus, Paulsen could have used the RBLLC funds to satisfy, at least in part, the Amended Judgment.

Paulsen further argues that there is no legal basis to subject unnamed parties – here, RBLLC – to collection efforts under the PSJA. Paulson cites *Green v. Ziegelman*, 282 Mich. App. 292, 767 N.W.2d 660 (2009), as authority for the proposition that post-judgment proceedings may not be used to collect judgments against previously unnamed defendants. *Green* is inapposite to the facts in this case because the magistrate judge did not resort to veil piercing to conclude that Paulsen violated the Restraining Order, and neither Paulsen nor RBLLC were added as defendants in the court of post-judgment proceedings. Rather, as noted above, Paulsen had access to, controlled, and used RBLLC funds, which could have been applied to the Amended Judgment, for his own personal use.

Paulsen also contends that the there is no clear and convincing evidence that the RBLLC withdrawals violated the Restraining Order. As support, Paulsen cites his affidavit, in which he states that he is the manager of RBLLC but has no ownership interest in the entity. Rather, he states that his wife is the sole owner. But as the magistrate judge noted, the RBLLC general ledger entries show that Paulsen used RBLLC funds for his own purposes, as shown by entries designated as "Owner's Equity: Capital Withdrawals" and notated with Paulsen's initials. These withdrawals included a $270,000 payment to Mosaic. Contrary to Paulsen's assertion, clear and convincing evidence supports the magistrate judge's conclusion.

***Proof of Nonexempt Status***

Paulsen next argues that the Report and Recommendation fails to cite clear and convincing evidence that the funds Paulsen used were not exempt from collection. Statutory exemptions are

7

set forth in M.C.L.A. § 600.6023. A review of those exemptions shows that none of the assets Paulsen transferred are even arguably covered by any of the identified exemptions, and Paulsen does not argue otherwise. The evidence of the withdrawals, alone, is clear and convincing.

### Proof of Loss to Mosaic

Paulsen again argues that even if he violated the Restraining Order, contempt sanctions are unwarranted because there is no evidence that Mosaic suffered a loss. The magistrate judge rejected this argument, noting that "[t]he harm caused by failing to pay a judgment owed when funds to do so are otherwise available should be self-evident." (R & R at 9.) The Court agrees.

Paulsen further asserts that there is no basis for contempt sanctions because there is no indication that he violated the Restraining Order at any other time or is presently doing so. Even if true, this argument provides no reason for not holding Paulsen in contempt for his past clear violations of the Restraining Order. Paulsen also contends that Mosaic suffered no loss because he and the other defendants have already paid Mosaic cash payments of $819,970.00. He also notes that he has delivered to Mosaic 3,000,000 shares of Rotate Black, Inc. common stock, with a value of $750,000.00 as of the date of delivery, and Mosaic received 90,000 shares of the common stock of Enucleus Inc. with an estimated value of $81,000.00 at the time of delivery. Still, there is no indication that Mosaic has been able to sell or otherwise liquidate those shares of stock to satisfy the Amended Judgment or even that the stock is still worth what Paulsen claims.

### Paulsen's State of Mind

In his final objection, Paulsen argues that the magistrate judge failed to consider his state of mind in recommending that Paulsen be held in contempt. Again citing his affidavit, Paulsen claims that he did not intentionally violate the Restraining Order; that he has never intended to interfere with Mosaic's collection efforts; and that since the entry of the Amended Judgment, he has transferred more than 75% of his total earnings to Mosaic.

"Good faith is not a defense in civil contempt proceedings. Likewise, wilfulness is not an element of civil contempt, but the state of mind of the contemnor is relevant only in the consideration of sanctions." *Gnesys, Inc. v. Greene*, 437 F.3d 482, 493 (6th Cir. 2005) (citations omitted). Although Paulsen claims good faith, his actions following the entry of the Amended Judgment suggest otherwise. As Mosaic has shown, time and again Paulsen has entered into settlement agreements crafted to pay Mosaic in full, but he has continually breached his obligations under those agreements. Similarly, with full knowledge of the Restraining Order and the outstanding balance on the Amended Judgments, Paulsen used funds – substantial funds – to maintain a lavish lifestyle at the expense of Mosaic. Moreover, when pressed, Paulsen has demonstrated an extraordinary ability to obtain large sums of money for partial payment of the Amended Judgment. Paulsen's actions fail to show a good faith effort to comply with the Restraining Order.

Given his past actions and resources, the Court is confident that Paulsen has the ability to comply with the recommended monetary sanctions. And, the threat of incarceration is appropriate to coerce his compliance with the Court's order.

**B.     Contempt Sanctions**

As sanctions, the magistrate judge recommended that Paulsen be ordered to pay Mosaic $401,869.37 within ten days, upon penalty of incarceration if Paulsen fails to timely pay that sum. While Paulsen has shown an ability to obtain large sums of money in a short period of time, the Court will allow him thirty days to make the payment, with penalty of incarceration for failing to do so.

In its response to Paulsen's Objections, Mosaic contends that the Report and Recommendation should have included a finding that Paulsen acted in contempt of the Restraining Order by transferring to Desai 4,500,000 shares of Rotate Black, Inc. common stock and $30,000.00

in exchange for Desai's interest in RBLLC and its affiliates. Mosaic contends that because this transaction also violated the Restraining Order, its omission from the Report and Recommendation was likely an oversight. However, in footnote 2, the magistrate judge explained that the $401,869.37 figure did not include withdrawals that Paulsen made from his personal account or the RBLLC account from March 15, 2008 until April 15, 2008, because the Edgerton Agreement was in effect during that time. (R & R at 10 n.2.) As the magistrate judge observed, pursuant to the Edgerton Agreement, Mosaic agreed to forebear from continuing its collection efforts from Paulsen so long as there was no breach by Edgerton. He thus excluded withdrawals Paulsen made while the Edgerton Agreement was in effect, until its breach on April 15, 2008, noting that "Plaintiff appeared to concur with this argument during the contempt hearing." (*Id.*) Because Paulsen made the transfer to Desai on or about April 3, 2008, also while the Edgerton Agreement was in effect, the Court will apply the magistrate judge's rationale and exclude that transaction from its contempt order.

## CONCLUSION

For the foregoing reasons, the Court will adopt the August 23, 2010, Report and Recommendation, with the slight modification that Paulsen will be allowed thirty, rather than ten, days in which to make the contempt payment.

An Order consistent with his Opinion will be entered.


Dated: May 3, 2011             /s/ Gordon J. Quist
            GORDON J. QUIST
            UNITED STATES DISTRICT JUDGE